Judge Underwood
delivered the opinion of the Cburt.
By the 4th section of an act passed in 1811, 2 Dig. 1144, it is provided in substance, that “no sheriff shall be compelled or required to go out of his county, to render his return of any writ of execution to him directed, provided he shall enclose such execution, with his return thereon, (keeping a copy thereof) directed to the plaintiff or his attorney, and send the same by mail to the county wherein the court is holden, whence such execution issued.” If there be no post office in the county, then the sheriff is to resort to “other safe conveyance.” An execution for $‘265 36, with interest from the 3rd of August, 1824, in favor of the defendant in error (Joseph Ross,) against W. J. Bab ston, which issued from the clerk’s office of the Fleming circuit court,'directed to the sheriff of Nicholas county, returnable on the Saturday succeeding the first Monday in September, 1826, came to the hands of Wm. H. Thompson, a deputy for the plaintiff in error, who was sheriff, on the 20th July, 1826.
In proper time the deputy enclosed the execution, with his return thereon “no property found,” keeping a copy thereof, in a letter directed to “Johnston Ross, or his attorney, Flemingsburg, Kentucky,” and depos-. ited the letter with its contents in the post office in “Carlisle, Ky.” Wm. P. Fleming, the attorney at law for Joseph Ross, seeing an advertisement of the letter, as not having been taken out of. the post office at Flemingsburg, advised his client that it probably contained the execution, as it had the post mark of Carlisle. On the 5th of February, 1827, Joseph Ross the plaintiff below and defendant here, took out the letter, and it diá contain his execution placed in Thompson’s hahds, with his return upon it. In a few days thereafter, said Ross gave the sheriff Thompson notice, that he would move against him at the ensuing March term of the Fleming circuit court, on the fifth day thereof, for the principal and interest of the execution, and for the damages allowed thereon by law. The motion to be predica *601 ted on the failure of the deputy to return the execution.
• The court gave Ross judgment for $318 38, the amount of principal, interest and costs, specified on the face of the execution, and 30 per cent, damages thereon; in all $413 89. To reverse this judgment, Thompson has prosecuted this writ of error. In addition to the facts already stated, it was proved on the trial, that Joseph Ross, had a brother named Johnston, who had removed to the state of Ohio, a few years before the execution of Joseph was placed in the hands of the deputy. Wm. H. Thompson who was admitted as á witness, the sheriff having executed a release to him, stated that he had received another execution against Ralston, which was in favor of Johnston Ross; that the execution in the name of Johnston Ross, issued from the clerk’s office of the Nicholas circuit, and that he was familiar with the'tiarrie of Johnston Ross, having done business in his name. He also stated that he knew the defendant personally, and believed him to be Johnston Ross, instead of Joseph, not knowing that there was a Johnston Ross, who had moved to the State of Ohio; that he directed the letter enclosing the execution, and put it in the post office; that it was designed and intended for the defendant in error; and that he did not know of the mistake, until the letter was shewn him in open court by Mr. Fleming. The witn.ess admitted the address to be in his hand writing. He also stated, that the defendant in error, on the 1st Monday in August, told him not to push the execution, as he was trying to settle, and shewed him a mortgage On Ralston’s property; but said if he did not communicate with the Witness in a week, then the witness was to go on with the execution. Witness said he went frequently to Ralston’s residence in search of property, but Could find none; and that he made nothing on the execution in the name of Johnston Ross, or the execution in Joseph Ross’s name. Ralston was a nephew of the Ross’s, and evidence was given conducing to prove, that he had secreted his property, one slave and a horse, so that the sheriff could not find it¿ Carlisle, the seat of justice for Nicholas county, is about twenty miles from Flemingsburg, the seat of justice for Fleming county.
*602 Upon the foregoing facts, the question arises, whether the sheriff has been guilty of such a violation of duty under the law, as will sanction the judgment which has been rendered against him. If the law has been substantially complied with, or if the sheriff can assign “agood cause” in the language of the statute, or in common parlance, give a good excuse for failing to comply, then he ought not to be held responsible.
What constitutes a good cause or good excuse for failing to return an execution? In the case of Waring vs. Thomas, 1 Litt. 253, this court decided that the mislaying an execution and inability to find it, amounted to good cause or good excuse for not returning it. In that case the nature of the casualty or the circumstances under which the execution was lost, are not detailed. Whether the loss proceeded from negligence or not, is left to conjecture. Disease of body or mental derangement, may constitute a good excuse in many cases for not returning executions. The principle applicable to the subject, as arising from the statute of 1811, is, that sheriffs shall not be liable for a failure to return process in time, where such failure proceeds from a cause, that could not be effectually guarded against by a diligent attention to business. The law excuses a sheriff for ugood cause ” but it has not defined what is meant by that expression; and we are left to ascertain the intent of the legislature by a consideration of the objects of the act of 1811, authorizing motions against sheriffs and giving 30 per cent, damages, for failing to return executions.
We cannot imagine that the legislature by that act, intended to do more than to prevent the wilful or negligent defalcations of sheriffs. It never was designed to make them warrant against those frailties and accidents which are incident, frequently, to the prudent and careful man. If such had been the intention of the legislature, no provision would have been made for excusing for good cause. Under the facts of this case, we are of opinion, that the mistake in using the name of Johnston for Joseph, has been accounted for in such manner, as to shew that it might reasonably happen with a prudent, diligent man. The name of Johnston was familiar to the deputy who had the execution; he *603 believed he knew the man personally; he had done business in that name; he could 'find no property of the defandant in the execution, and it was unnecessary to read it, until he did find property. He had conversed: with the plaintiff in the execution, believing his Christian name was Johnston. He had no object in withholding the execution, so as to use money which he had collected. No selfish motive could have existed for not returning it. The attempt to return it, was. made, and that in good faith. The mistake proceeded from a confidence, that the direction of the letter was right. To make the sheriff pay the debt and damages under such circumstances, would we think be unreasonable. It would be a practical infliction of a penalty without a crime. Moreover, we are of opinion, that the law was substantially complied with.
The direction of the letter to “Johnston Ross or his attorney, “post marked “Carlisle,” would have been deposited, on its arrival in Flemingsburg, in the letter box, where Joseph Ross’s letters would be put. If the latter inquired for letters, the presumption is strong, that he would have learnt that such a letter was there; and the conclusion from the manner of its direction, and the place from whence it came, would have been forcible that he was the person for whom it was intended; particularly as he knew that his brother Johnston had been a citizen and resident of the State of Ohio, for years; and as the post master ultimately let him have it, the inference is, that he would have got it at any time by applying for it. Suppose in writing the-direction on the letter, instead of making the mistake in the Christian name, a mistake had been made in the sir name by spelling it Russ, instead of Ross, should that have rendered the sheriff liable? Or suppose it had been spelt Ros, leaving out one s, should the sheriff be liable? Such errors or mistakes, where it is clear that the sheriff was endavoring to do his duty, and when it is shewn that the other party has not been injured, ought not to render him liable; and as such mistakes or inadvertences may happen with the careful and prudent, we think they ought to be received as ex* cuses in cases circumstanced like the present.
Crittenden, for plaintiff; Haggin and Loughborough for defendant.
Wherefore, the judgment is reversed, and cause remanded for judgment to be rendered for the plaintiff in error, who must recover his costs in this court.